The next case on the calendar is CSX Transportation v. Island Rail Terminal. May it please the Court, my name is Jarrett Behar. I'm the attorney for Appellants Maggio Sanitation, Eastern Resource Recycling, and Island Rail Terminal. Article 52 of the CPLR was meant to provide an easy mechanical procedure for dealing with assets of judgment debtors that are in the hands of third parties. The District Court decision did extreme violence on both procedural and substantive grounds to Article 52. Specifically, Your Honors, with respect to the procedural improprieties, this Court specifically has declined to rule as to whether or not you can proceed by motion on an Article 52 turnover motion. I guess it's time we do, right? Well, Your Honor, I think actually there are substantive grounds that if the Court wanted to, it could substantively reverse the District Court without getting to that point, largely on the issue of priority and damages. However, even if the Court did rule on that, there's two points there. One is in the alliance bond case. Well, but if we sent it back for the District Court to rule on the issues of priority and damages, we would be assuming that the District Court had appropriate procedural, was in an appropriate procedural posture to do that. Well, Your Honor, what I'm suggesting is I think there's enough in the record for this Court to say, in reviewing the issues of priority, the fact that CSX was clearly last in line and there was insufficient funds to satisfy their judgment, you don't even have to reach that issue. Are they clearly last in line or are they clearly third in line? They're clearly last in line, Your Honor, due to the fact that the State Court issued a turnover order in February of 2015 directing that three judgment creditors be paid, including two that had already issued sheriff's levies. And CSX's levy from the Marshal didn't come until July of 2015. Well, why does that constitute an order of the court when the court would seem to me to be the one in which the restraining notices were issued? I understand the question, Your Honor. The reason for that is that that's actually reading words into the statute that's not there, order of the court. The CPLR doesn't ever refer to a court if you flip through the entire context. And actually, that specific section says you can pay money pursuant to a restraining notice if you are directed by the sheriff or an order of the court. So it would seem to not make sense that I can pay money that's subject to a restraining notice if the sheriff directs me to it. But if it's an order of the court, it has to be the court that issued the restraining notice. That also does violence to the fact that- Would it not disrupt things if another court could come along and order the release of funds that the first court had ordered restrained? Absolutely not, Judge Tin. First of all, Section 5240 of the CPLR specifically gives courts broad discretion to modify, limit, change any sort of enforcement procedure under Article 52 of the CPLR. And second of all, this gets back to the legislative history and the case law of Article 52, where the New York State Legislature was trying to do a very mechanical, easy to follow structure for setting the priority of judgment creditors. There's two ways that you set your priority. Serving a restraining notice isn't one of them. You serve a levy, which all you have to do is ask the sheriff or in the case of a federal judgment, ask the marshal, please levy on this. The levy comes, you've set your date of priority. The second is by obtaining a turnover order. And the case law under Article 52 specifically contemplates a situation, Judge Tin, where someone applies to a court for a turnover order, they're waiting on that decision. In the meantime, a second judgment creditor identifies the same asset in the hands of a third party, belonging to the judgment debtor, and simply gets the ministerial step of getting a levy. That creditor, just by going to the sheriff, has now obtained priority over the judgment creditor that went to a court and asked for a court order. That's the mechanical way that that statute applies. Does getting that levy allow the second creditor to ignore a restraining notice issued by the first court? No, Justice Livingston, because you're not ordering it. You're paying it as directed by the sheriff, which the CPLR specifically allows. And that's the structure they set up. The legislature wanted to make it easy on third parties holding assets of judgment debtors. They've done nothing wrong other than they may owe a debt to the judgment creditor, so you have a simple mechanical process to do that. And, for example, you could have an asset of a judgment debtor, and you could have restraining notices from multiple courts. If you take that very, very narrow reading, which I don't think is supported by the text of 5240, because it does say sheriff or court order, it also doesn't say marshal, which is what you get when you have a federal judgment, so that's another problem with that interpretation. You could have judgments from six different counties across New York State, and judgments from the Southern District and the Eastern District and the Northern District. Now, myself, as an independent third party, I now have to go to all those courts and seek leave to release the asset? No. I get to look at the order of the levies and the turnover orders, and I pay them out in according to that priority until my fund is complete. And that's what happened here. The garnishees had no preference among any of the judgment creditors. They only had the preference as to finality. So what did they do? They were in a court proceeding. The two judgment creditors that had levied against them had come into that proceeding. One of them, actually, we said, hey, please intervene so we can get finality. CSX was invited to participate. They were invited by the attorney for MJ, the judgment debtor, to intervene. They declined to do so. They knew all along where this was going, that we were going to get an order from the court seeking the term. By the same token, once you had settled the state court case, before you released the funds, should you not have gone back into federal court to make sure that you weren't violating the restraining order by releasing the settlement funds? Well, Your Honor, we had an order of the court directing us to pay the funds, which is appropriate under 5240. That's what it says. You can't pay the funds unless you're directed by the sheriff. I understand that, but would it not have made some sense to go back into the court that had issued the restraining order? Well, Your Honor, two answers to that. One is to put the ball in the hands of the person that was really interested in doing this. CSX had plenty of opportunities to protect its rights. In fact, the CPLR specifically allows CSX to intervene in the state court proceeding while we're doing that. Again, we're not the judgment header. We're just a third party that has an asset. And you did say in the state court proceeding that it's the position of all the creditors in that proceeding that we have priority over CSX, and we've informed CSX of that fact. Exactly, Your Honor. And we did all of this with the explicit knowledge, and CSX had appeared. They'd written letters to the court. The judge seemed to pick up on and infer something from the record, the district court judge, that we hadn't told the state court judge that CSX had served restraining notices. That's probably part of the problem with allowing this to proceed by motion is we didn't get a hearing. This court in HBE Leasing Corp. did acknowledge that even if you're going to proceed by motion, it has to follow the summary judgment standard. They submitted no evidence in admissible form. They proceeded just by brief. There was no hearing that was held on disputed facts, as HBE Leasing Corp. and other decisions of this court require. And I can tell you, as the only attorney involved before the district court that was involved in the state court proceedings, we absolutely informed Justice Emerson of that. In fact, if CSX hadn't served a restraining notice, they had no claim to the pool of funds held by the third parties at all. So there was no reason that they would be participating in the state court litigation that was determining these priorities unless they had served a restraining notice. So that argument, that inference that the district court made, shows the prejudice that accrued to us. There was a negligent, maybe entirely good faith, but a negligent failure to go back to the district court and get the restraining order lifted before the monies were paid. Again, Your Honor, I disagree with that based on the interpretation of 5240 specifically says you can pay this out pursuant to a direction of the sheriff or a order of the court. And again, I don't think the New York State Legislature was requiring innocent third parties that happened to be holding assets belonging to a judgment debitor to have to go to however many courts they receive restraining notices from to seek permission to release the funds in order of the priority that the New York State Legislature has specifically and mechanically required be sent out in order. Even if we were to disagree with you about that, and I'm not saying we are, but if we were, your second position would be there are clearly disputed issues of fact as to the damages flowing from the violation of the restraining notice because the other creditors had higher priority. That's exactly right, Justice Livingston, and that gets to our due process argument as well. Unless there are any other questions, thank you very much. May it please the Court, my name is Jeffrey Cohen on behalf of Pele CSX Transportation. The law with respect to restraining notice is crystal clear, and it was unquestionably violated in this case. If we're going to have the court interpret Section 5222 to provide that any court, rather than the court issuing the restraining notice, can lift that restraining notice, it will result in absurd outcomes. And that is what the district court found. It would have been a simple process to go back to the district court to address that issue. And when we talk about culpability, if we're looking at equity here, I don't think we are, but it's been colored with an equitable flair of an innocent party. The Guarnaschis here aren't innocent parties with respect to what's going on here. There was a clear service for personal jurisdiction purposes of the restraining notice. The Guarnaschis could have done one of multiple things to right this situation so they wouldn't be violating the restraining notice, which is akin to a court order or an injunction. They could have moved to vacate the restraining notice under Section 5222. They could have moved to modify under 5240. They could have moved to join CSX into the state court actions under New York Law 1001. And they could have done what happens in many instances when there's multiple claimants for a pot of money that's too small. They could have interpled the funds. That happens every day. Put it in a pot, let the court decide. When you put it in a pot, you let the court decide. Notice has to go out to all interested parties. By inviting CSX informally to— The district court proceeded on a damages theory that you were damaged by the violation of the restraining notice. If at that point an analysis were done, in fact, was CSX damaged? Yes, CSX—you're correct. If you looked at the priorities— With respect to the two lines of relief, the turnover and then damages after they already distributed the funds, damages associated with the violation of the restraining notice. With respect to damages, the evidence of record is an asset purchase agreement providing for a payment for $3.5 million. And the settlement, which was put into effect. Now, that settlement was not agreed to by CSX. CSX wasn't a party to any of that. And the law associated with the restraining notice is crystal clear in how a party must handle it. They cannot sell, transfer, interfere with, or otherwise dispose of the funds. With respect to damages, there was $3.5 million due to MJ. How can you say that when there's a raging dispute over whether $3.5 million was really due to them because there were setoffs and controverted claims about that? With respect to the contested aspect of that $3.5 million, there was a $500,000 alleged setoff and allegations in a counterclaim of millions. However, the court in Aspen, which addressed the way to establish damages in this scenario for violating a restraining notice, spoke only to setoff. That was prior to the restraining notice. It didn't speak to allegations or amorphous counterclaims. It spoke only to setoff. To the extent there's a counterclaim, you're saying that the counterclaim plaintiff is just like any other person who has a claim against MJ that isn't even reduced to judgment yet. Is that the point? The merits of the counterclaim and the facts of the counterclaim have not come to fruition to challenge that $3.5 million. They're just allegations. With respect to a reduction of the dollars by the garnishees, the case that speaks to this speaks to setoff. So there's no records. There's no evidence of record to give weight to that counterclaim such that the district court needed to discount that $3.5 million. The only case law associated with that dealt with setoff, and that's $500,000. So $3 million minus the $500,000, there's still money left in that scenario. Shouldn't these issues have been explored at a hearing? Well, with respect to the due process issue of a hearing. But some of the amounts were disputed, and it wasn't, you know, there's a lack of clarity as to the amounts. Well, the $3.5 million issue, there was these issues, the $3.5 million was set in the asset purchase agreement. The amount due to CSX, the $1.-some-odd-million was established as damages. These were fixed. All of the issues were made aware to the garnishees, and they could have. There's that litany of things that I suggested that could have been done procedurally in state or federal court to address this. What about the question of the date? The ELS actually served its execution on November 5th, which predates the garnishment order. Is that disputed? Well, there was a question as to whether or not that date is the court chose not to consider that date because the court determined there wasn't a good reason that wasn't brought up earlier in the proceedings. I understand. But is that right? Was that date correct? Was that the actual date? There was a restraining notice that predated it, and then it had to be reestablished. So that date for ELS was accurate, but it needed to be— The November 5th date. I'm sorry? The November 5th date. The November 5th date. But so you're—go ahead. And SG, the record, it seems to be silent about when it secured its lien, or did I miss something? No, I'm not clear on that, no. And with respect to this issue, there's some global issues here regarding, you know, who has culpability for the act here? Did the Guarnaschis have to act or did CSX have to act with respect to having a just outcome? And here in the Federal proceeding, it's unquestioned that the Guarnaschis were served. They knew what was going on. They made a conscious decision. Maybe there was a lot of angst to get it done because the principal was going to get some money from that settlement or the attorneys were going to get some money from that settlement. But you can't disregard a Federal court restraining notice which is akin to an order. So when we talk about equities here, we believe that the Guarnaschis needed to act and that there was no subversion of any interest of justice. It was just that there was a failure, a negligent failure that courts have recognized is actionable by damages. Well, let's say we agreed with all of that. I'm still puzzled as to why it isn't the responsibility of the district court. I mean, maybe it was wrong for them not to come back to the district court. But there's still a question of whether there were damages that flowed from that and doesn't that turn on sorting out what the actual priorities were? Because if the actual priorities were against your client in any particular . . . to that extent, there wouldn't be damage from the failure to go back to the district court, right? Well, I believe, Your Honor, when it comes to the turnover . . . I'm sorry, the restraining notice, the analysis is whether or not the Guarnaschis has a setoff. And they're also arguing a counterclaim. That analysis, as compared to the turnover order, is distinct and different. And the position is that the Guarnaschis did not have superior rights to that through setoff. And that there's a $3.5 million pot that was available that CSX never agreed to consolidate down to 2.2. If it was 3.5, there would be enough money to supply the prior creditors as well as CSX. But that's a question as to whether the pot was 3.5 or something less than 3.5. The record as it stands right now has nothing contesting that that 3.5 was not the pot. There was the allegation of a counterclaim, but there was no admissible evidence on the record that compromised the 3.5. Well, the case settled for 2.2. That's . . . That's a compromise. That was a compromise. However, CSX was not included in that compromise. They were not party to that compromise. They did not consent to that compromise. And there could have been other . . . They were invited to participate and did participate for a while and then pulled out, right? CSX was invited but in the end had no obligation to participate and in the end chose not to and rested on the restraining notice as these other parties could have interplied the funds or easily joined CSX. That easily could have been done. They chose not to. They knew that they could have, and they chose not to. They violated the restraining notice negligently, if not intentionally. Thank you. Your Honor, just some brief points by way of clarification. Now, Justice Livingston, you had asked when Sullivan and Gardner had set its priority. It was set on February 26, 2015 when the state court issued the order directing the payment. There's two ways to set priority. One is Sheriff's levy. The second is order directing payment. So all three creditors, which ate up all of the $2.2 million except for $8,000, had priority over CSX, which for whatever reason waited until July of 2015 to issue its levy against the $2.2 million, which Judge Chin correctly noted was a product of not just a settlement of a hotly contested claim, but one done with court supervision and then so ordered by Justice Emerson in the New York State Supreme Court. There is actually a provision in Article 52 that allows a judgment creditor to try to force a third party that has an incohate claim against a judgment debtor to litigate it if it's choosing not to. So this is all about CSX trying to put the burden back on the Garnaschis for what it really could have easily solved by just issuing a marshal's levy early on, but chose not to. And it's my position, and I think Your Honor should rule, that the New York State legislature, in enacting Article 52, chose to make it easier on the Garnaschis and put the burden on the judgment creditors, not the other way around. Both the district court and Mr. Cohen raise the specter of chaos that will accrue if the court adopts the district court's ruling, but nobody's specified what that chaos actually would be. No one suggested that any court sitting in New York, federal or state, wouldn't sit down and analyze the priorities of the various levies and turnover orders and evaluating whether or not to direct a payment where a restraining order was issued by another court, and go through the analysis and say, okay, you have priority or you don't have priority, I'm directing payment. I don't think anyone would be willing to suggest that courts won't do their job when confronted with an application to modify a restraining notice from another court. Thank you very much. Thank you both.